**NOTICE**

Decision filed 09/23/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230204-U

NO. 5-23-0204

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

**NOTICE**

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* COMMITMENT OF KYLE HYDRON | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07-MR-289 |
| | ) | |
| Kyle Hydron, | ) | Honorable |
| | ) | Timothy D. Berkley, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the circuit court did not err in finding that no probable cause existed to warrant an evidentiary hearing on whether the respondent was no longer a sexually violent person, and no argument to the contrary would have arguable merit, this court grants the respondent's appointed appellate counsel leave to withdraw and affirms the judgment of the circuit court.

¶ 2    The respondent, Kyle Hydron, was found to be a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1 to 99 (West 2022)). Since 2010, he has been committed to the Department of Human Services (DHS) for institutional care in a secure facility. He appeals from the circuit court's order, entered in 2023, granting the State's motion for a finding that there was no probable cause to warrant an evidentiary hearing to determine whether the respondent was still an SVP. The respondent's appointed attorney on appeal

1

has concluded that this appeal lacks merit, and on that basis, the attorney has filed a motion to withdraw. See *Anders v. California*, 386 U.S. 738 (1967); *In re McQueen*, 145 Ill. App. 3d 148, 149 (1986) (*Anders* procedure applicable in appeals from orders of involuntary commitment to mental institution). Counsel properly notified the respondent. This court gave the respondent an opportunity to respond in writing to counsel's motion, but he has not taken advantage of that opportunity. Having considered counsel's motion and the entire record on appeal, this court likewise concludes that this appeal does not present any arguably meritorious issue. Therefore, counsel's motion to withdraw is granted, and the judgment of the circuit court is affirmed.

¶ 3                                    BACKGROUND

¶ 4    *The Respondent's Adjudication as an SVP and His Commitment for Institutional Care*

¶ 5    The respondent was born in 1985. In 1999, in Madison County case No. 99-JD-282, the respondent was adjudicated a delinquent for aggravated criminal sexual assault. The respondent, who was 13 years old at the time of the act, had sexually penetrated his 6-year-old sister. He was placed on probation for five years. In 2002, the respondent's juvenile probation was revoked due to a violation of the conditions of probation, and he was committed to the Illinois Department of Corrections (DOC), Juvenile Division. While there, in 2003, the respondent kicked a correctional officer. For that, he was charged with aggravated battery; he pleaded guilty to that charge and was sentenced to imprisonment in the adult division of DOC for four years. In 2006, he was released from prison and began serving a term of mandatory supervised release (MSR). However, he violated the terms of MSR and was returned to the custody of DOC.

¶ 6    In 2007, just prior to the respondent's scheduled release from prison, the State filed a petition alleging that the respondent was an SVP under the SVP Act. See 725 ILCS 207/15 (West 2006). More specifically, the petition alleged that (1) the respondent had been found delinquent

2

for a sexually violent offense, specifically, aggravated criminal sexual assault (see *id.* §§ 15(b)(1)(B); 5(e)(1) (citing 720 ILCS 5/12-14 (West 2006)); (2) the respondent had a mental disorder, paraphilia (see *id.* § 15(b)(4)); and (3) the respondent was dangerous to others because his mental disorder created a substantial probability that he would engage in acts of sexual violence (see *id.* § 15(b)(5)). Trial counsel was appointed for the respondent.

¶ 7    In November 2009, a jury trial was held to determine whether the respondent, then 24 years old, was an SVP. For the State, two expert witnesses testified that, to a reasonable degree of psychological certainty, the respondent met the criteria to be found an SVP. These two experts agreed that the respondent's paraphilia, not otherwise specified, made his engaging in future acts of sexual violence substantially probable. For the respondent, one expert testified. He testified, to a reasonable degree of psychological certainty, that the respondent did not have a paraphilia, and he had only a low risk of sexually reoffending. The respondent chose not to testify. The jury found, beyond a reasonable doubt, that the respondent was an SVP. See 725 ILCS 207/35 (West 2008). The circuit court ordered DHS to conduct a predisposition investigation and a supplementary mental examination. *Id.* § 40(b)(1). In February 2010, the circuit court committed the respondent to the custody of DHS for institutional care, custody, and treatment in a secure facility until such time as he was no longer an SVP. See *id.* § 40(a), (b)(2). The respondent's status as an SVP, and his commitment to DHS for institutional care, have remained unchanged to this day.

¶ 8    On direct appeal, this court affirmed the circuit court's judgment. *In re Detention of Hydron*, 2012 IL App (5th) 100229-U. (This court's order in the direct appeal includes a thorough summary of the testimonies of all three expert witnesses at the respondent's SVP trial, plus other evidence indicating that the respondent would engage in future acts of sexual violence.)

¶ 9                    *Periodic Reexaminations of the Respondent*

¶ 10     Within six months after the respondent's initial commitment, DHS submitted to the circuit court a written report on the respondent's mental condition, as required by the SVP Act. See 725 ILCS 207/55(a) (West 2010). This reexamination report recommended that the respondent should continue to be found an SVP and should remain committed for secure care. The reexamination report was the basis for the State's filing a motion for a finding that there was no probable cause to believe that the respondent was no longer an SVP. The respondent did not petition the court for discharge, but he also did not affirmatively waive the right to petition for discharge. See *id.* § 65(b)(1) (West 2010). Due to the absence of a waiver, the circuit court set a probable cause hearing to determine whether facts existed that would warrant a hearing on whether the respondent was still an SVP. *Id.* At the probable cause hearing in October 2010, the respondent was not present, but his appointed attorney was present. See *id.* At the close of the probable cause hearing, the circuit court entered an order of no probable cause to believe that the respondent was no longer an SVP. See *id.*

¶ 11     As the years passed, DHS conducted periodic psychological reexaminations of the respondent and promptly submitted reports thereon to the circuit court, as the SVP Act required. 725 ILCS 207/55(a), (b) (West 2012). All of these reports concluded that the respondent remained an SVP and should continue in institutional care in a secure facility. The State continued to use these reexamination reports as the basis for its motions for findings of no probable cause. The circuit court continued to hold probable cause hearings, and continued to find no probable cause to believe that the respondent was no longer an SVP.

¶ 12     In June 2014, December 2014, and May 2015, the respondent filed, through counsel, a petition for discharge from custody over the objection of DHS, claiming that he was no longer an

4

SVP. See 725 ILCS 207/65(b)(1) (West 2014). This petition for discharge did not coincide with the periodic reexamination process. In August 2016, DHS filed its latest reexamination report on the respondent, and in September 2016, the State filed a motion for a finding of no probable cause, based on that reexamination report. In March 2017, after numerous delays, the court held a hearing on the respondent's petition for discharge and the State's motion for a finding of no probable cause. For the State, an expert testified. For the respondent, the respondent's father and the respondent himself testified. The court concluded that the State had met its burden of proving, by clear and convincing evidence, that the respondent remained an SVP. See 725 ILCS 207/65(b)(2) (West 2016). The court granted the State's motion for a finding of no probable cause, and it denied the respondent's petition for discharge. The existing commitment order remained in effect. A written order memorialized the court's findings, etc. The respondent appealed from the circuit court's order. This court affirmed. *In re Commitment of Hydron*, 2018 IL App (5th) 170113-U.

¶ 13    DHS continued to file periodic reexamination reports on the respondent. The State continued to file motions for findings of no probable cause. The court continued to find no probable cause to warrant a hearing on whether the respondent was still an SVP.

¶ 14    *The Latest Reexamination of the Respondent, and the Order That is the Subject of the Instant Appeal*

¶ 15    Prior to the instant appeal, DHS's most recent reexamination report was prepared on September 16, 2022, and the State's most recent motion for a finding of no probable cause was filed on September 20, 2022. The reexamination report stated that at the time of the respondent's reexamination, he received notice of his right to petition the circuit court for discharge, but he did not affirmatively waive that right. The State's motion asked the court to set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the respondent was still an SVP. See 725 ILCS 207/65(b)(1) (West 2022). According to the State, that hearing would

5

consist only of a review of the reexamination report and arguments on behalf of the parties. See *id.* The State anticipated that, at the conclusion of the hearing, it would request a finding that there was no probable cause to believe that the respondent was no longer an SVP.

¶ 16 Accompanying the State's motion was the reexamination report itself. The reexamination was conducted by Amy S. Louck Davis, PsyD (hereinafter, Dr. Louck Davis). Her ultimate conclusions were that (1) the respondent had not made sufficient progress in treatment to be conditionally released, and (2) his condition had not changed, between the time of his last reexamination and the current one, to where he was no longer an SVP.

¶ 17 The "personal history" section of the reexamination report was derived from the last reexamination report, dated September 23, 2021, which was authored by Steven Gaskell, PsyD. (Dr. Gaskell was one of the State's two expert witnesses at the respondent's SVP trial in 2009, and he conducted the predisposition investigation and most or all of the previous reexaminations of the respondent.) This section described the respondent's troubled childhood, which featured unreliable parents and an unstable home life. It recapitulated the respondent's involvement with local law enforcement, juvenile court, children's homes, mental-health professionals, psychiatric hospitals, detention facilities, and the Juvenile Division of the Illinois Department of Corrections. Police reports and juvenile court records indicated that the respondent's behaviors as a juvenile included exposing himself to young children (for which he was adjudicated delinquent) and sexually assaulting girls, including relatives. One of those sexual assaults resulted in an adjudication of delinquency in 1999, which served as a basis for the SVP petition that was filed in 2007 and that led to the respondent's commitment to DHS.

¶ 18 Turning to the present, Dr. Louck Davis reported that the respondent had "returned to treatment during this re-examination period after approximately two years of no treatment

6

participation." He participated in "an engagement group focused on relieving barriers to the change process." In June 2022, according to Dr. Louck Davis, the respondent "was placed on increased observation for mental health and security concerns after refusing a housing assignment, making a threatening stance/gesture toward a Security Therapy Aid [*sic*] and stating he felt like killing the Security Director."

¶ 19    Dr. Louck Davis wrote in the reexamination report that she diagnosed the respondent with the following disorders: (1) unspecified paraphilic disorder, (2) other specified personality disorder with narcissistic and antisocial traits, and (3) attention deficit hyperactivity disorder, combined presentation. These diagnoses, all of which were contained in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), were based on her hour-long clinical interview with the respondent and her review of his psychological and disciplinary records at the DHS facility, among other things. The "essential features" of a paraphilic disorder include an "intense and persistent" sexual interest in nonconsenting persons or in immature or especially vulnerable persons. The respondent's antisocial traits included "a failure to conform to social norms," impulsivity, aggressiveness, and "a lack of remorse," as indicated by "being indifferent to or rationalizing" the mistreatment of others.

¶ 20    Finally, Dr. Louck Davis assessed the respondent's risk of reoffending. First, she noted that the respondent

> "was 13 years old when he committed a criminal sexual offense for which he was adjudicated and there currently are no actuarial risk assessment instruments appropriate and ethical for use with individuals who were charged or convicted/adjudicated **only** of sexual assaults that occurred prior to age 17. Thus, a structured clinical judgment approach was used to estimate [the respondent's] risk for recidivism." (Emphasis in original.)

7

To aid her in making such a clinical judgment, Dr. Louck Davis used the Sexual Violence Risk-20 (SVR-20). She described the SVR-20 as a 20-item checklist of risk factors for sexual violence that were identified by a review of the literature on sex offenders. The checklist was developed to improve the accuracy of assessments for the risk of future sexual violence, she wrote.

¶ 21    Several of the factors listed on the SVR-20 "were rated as present to a high degree [in the respondent]." These high-degree factors included, *inter alia*, a psychopathic personality disorder with traits of arrogance, deceit, impulsivity, and deficits in attachment or emotion; a history of causing physical harm, or the fear of physical harm, in order to gain the compliance of sexual-offense victims; the lack of making and implementing realistic life plans; and personal beliefs that excuse a lack of participation in interventions. Over the years, the respondent had attempted sex-offender-specific treatment in different settings, but "with limited benefit." Based upon all of the foregoing, Dr. Louck Davis estimated that the respondent had "an Above Average range of risk." To a reasonable degree of psychological certainty, she concluded that (1) the respondent's condition had not changed since his last reexamination, and he met the criteria for continued commitment, and (2) the respondent had not made sufficient progress in treatment to be conditionally released.

¶ 22    On February 21, 2023, the circuit court held a hearing on the State's motion for a finding of no probable cause. The court considered the reexamination report dated September 16, 2022, and the arguments of counsel. The court found no probable cause to warrant an evidentiary hearing to determine whether the respondent was still an SVP, and it granted the State's motion. His commitment to a secure facility remained unchanged.

¶ 23    The respondent appealed. In his *pro se* notice of appeal, he wrote that he wanted to appeal the circuit court's "decision to allow the State to use the STATUS-99-R information, right after

8

they clearly stated that they (the State) 'cannot' use it." The circuit court appointed an appellate attorney for the respondent.

¶ 24                                    ANALYSIS

¶ 25    In his *Anders* motion, appointed appellate counsel suggests two potential issues in this appeal, *viz.*: (1) whether the circuit court erred in allowing DHS to use the STATIC-99R when gauging the respondent's risk of reoffending, and (2) whether the circuit court erred in granting the State's motion for a finding of no probable cause. These issues will be discussed in turn.

¶ 26    After an SVP is committed under the SVP Act, the DHS is responsible for evaluating his mental condition within 6 months after commitment and thereafter at least every 12 months, "for the purpose of determining whether: *** the person has made sufficient progress in treatment to be conditionally released." 725 ILCS 207/55(a)(1) (West 2022). At the time of reexamination, the SVP receives written notice of his right to petition the circuit court for discharge. *Id.* § 65(b)(1). If he does not affirmatively waive that right (as the instant respondent did not do), the court must "set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination ***, the condition of the committed person has so changed that he or she is no longer a sexually violent person." *Id.*

¶ 27    At a probable cause hearing, the circuit court only reviews the reexamination reports and hears the parties' arguments. *Id.* If the court finds that probable cause does exist, it must set an evidentiary hearing on the issue. *Id.* § 65(b)(2). Whether probable cause exists to warrant a further evidentiary hearing is a matter that rests in the sound discretion of the court, and this court will not disturb the court's probable-cause determination unless that determination represents an abuse of the court's discretion. *In re Detention of Cain*, 341 Ill. App. 3d 480, 482 (2003). Some districts disagree with this standard of review and hold that the proper standard is *de novo*. See, *e.g.*, *In re*

9

*Commitment of Kirst*, 2015 IL App (2d) 140532, ¶¶ 48-49. Regardless of which standard of review is used, though, the result here is the same.

¶ 28 In regard to counsel's first potential issue in this appeal—*i.e.*, whether the circuit court erred in allowing DHS to use the STATIC-99R when gauging the respondent's risk of reoffending—it is based on a false premise, namely, that the DHS used the STATIC-99R when gauging the respondent's risk. The STATIC-99R is a commonly used actuarial assessment tool to measure the relative degree of risk of sexual recidivism for a person who has been convicted of a sexual offense. See, *e.g.*, *In re Commitment of Simons*, 213 Ill. 2d 523, 534-35 (2004). However, when preparing the respondent's reexamination report of September 16, 2022, Dr. Louck Davis simply did not rely on the STATIC-99R. In fact, she did not mention that particular instrument at all. Instead, she used the 20-item checklist known as the SVR-20, and she used it only as an aid in developing "a structured clinical judgment approach" to estimating the respondent's risk of recidivism. The first potential issue has no arguable merit.

¶ 29 As for the second potential issue—*i.e.*, whether the circuit court erred in granting the State's motion for a finding of no probable cause—it, too, has no arguable merit. At a probable-cause hearing, the question is whether probable cause exists to believe that the committed person is no longer an SVP. That is, the question is whether the committed person has made sufficient progress in his treatment, etc., that he is no longer an SVP. Here, in the reexamination report of September 16, 2022 (the most recent report prior to the probable-cause hearing), Dr. Louck Davis reviewed the respondent's experiences in his treatment facility, but she did not find anything that would lead one to suspect that the respondent was no longer an SVP. Dr. Louck Davis opined that the respondent's condition had not changed since the last reexamination, one year earlier. There was some indication that the respondent, just perhaps, was beginning to improve; Dr. Louck Davis

10

wrote that he had recently returned to treatment "after approximately two years of no treatment participation." This news is somewhat encouraging, but it does not come close to altering the respondent's status as an SVP or justifying a change in his commitment order.

¶ 30                              CONCLUSION

¶ 31     Having reviewed the entire record on appeal, this court cannot identify any issue of arguable merit that can be raised in this appeal. Accordingly, the respondent's appointed appellate attorney is granted leave to withdraw, and the judgment of the circuit court, finding no probable cause to believe that the respondent was no longer an SVP, is affirmed.

¶ 32     Motion granted; judgment affirmed.